The final case on the call this morning is case number 1, 2, 3, 6, 6, 7, Jakich v. Aulds. I understand, Mr. Skelzo, you're going to divide your argument time and your reply time. That's correct. Good morning. Good morning. May it please the Court. My name is Todd Skelzo with Mirabella, Kincaid, Frederick & Mirabella, and I represent the appellant, Rosemary Aulds, along with my co-counsel and father, Michael Skelzo, who will be handling the rebuttal argument. The Equal Protection Clause of the United States Constitution guarantees that no state shall deny to any person within its jurisdiction the equal protection of the laws. Meanwhile, Section 513 of the Illinois Marriage and Dissolution of Marriage Act allows a court to order divorced, never married parents to contribute to the post-high school education of their children. In this case, the trial court declared that Section 513 violated the Equal Protection Clause of the U.S. Constitution because it deprived Mr. Jakich of his right to consent to his daughter's choice of school. We asked this court to reverse that order and to reinstate the trial court's prior order, which had allocated college expenses between the parties. In support of this, I'll address first the procedural issues, that is, why the trial court erred in even considering the constitutional question, and secondly, the substantive issues of why Section 513 is constitutional. With regard to the procedural issues, the case has a somewhat long and complicated procedural history, but the key point is that there was a full evidentiary hearing on Ms. Old's petition for college contribution, in which the trial court heard the testimony of both parties, heard the testimony of the daughter, admitted documents into evidence, and actually ruled and allocated the college expenses between the parties with 40 percent to Mr. Jakich, 40 percent to my client, and the daughter being responsible for the remaining 20 percent. Notably, the trial court did not hold Mr. Jakich responsible for the daughter's sophomore year, even though it could have, because my client filed her petition for contribution prior to her sophomore year. So the trial court only held Mr. Jakich responsible for her junior and senior years. So we have a final ruling. Then, 62 days later, Mr. Jakich files a motion to declare Section 513 unconstitutional for the first time. My client objected to the trial court, saying, hey, this is an untimely motion to reconsider. 62 days have passed, and also under the doctrine of res judicata, arguing that the constitutional question should have been raised in the first instance. Despite acknowledging these procedural deficiencies at a prior hearing, the court ultimately went on to consider Mr. Jakich's motion and, in fact, granted it. This was error. However, even if the trial court was correct in overlooking these procedural objections, it was then bound by this court's decision in Kujawinski under the doctrine of stare decisis. As this court recently stated in Blumenthal v. Brewer, a lower court has no authority to overrule or modify the opinion of a higher court. And this is exactly what the trial court in this case did. I would also note that the trial court's opinion of May 4, 2018, doesn't address any of these procedural deficiencies. It just goes right into a constitutional analysis. We believe that this silence speaks volumes. The court, in ruling on the constitutional question, also violated the rule of deciding cases on nonconstitutional grounds, if at all possible. Mr. Scalzo, if we agree with your argument that the lower court, the trial court, erred in, as you said, virtually overruling one of our cases, what's the proper remedy? Are you asking us just to summarily reverse and vacate the trial court's order? Because we wouldn't get into the merits. I know you have a Rule 18 argument. You have a number of arguments. But on that first point, what's the remedy that you're requesting? Well, Your Honor, we would prefer, actually, that this court get to the constitutional question. With all humility, we believe we've been on all points. So ignore everything you've said so far. Absolutely, absolutely. No, no, no. Don't ignore it, and we're certainly not waiving our procedural objections. But here's why, Your Honor. If the court rules on the procedural issues, litigants and even trial courts, who might agree with what the trial court did in this case, will say, oh, okay, all I have to do is remove the procedural infirmity, and I still have a shot at declaring this statute unconstitutional. And I know since this ruling came down, other attorneys and other courts, anecdotally, have talked about this issue and think that this is an open question. And we believe that Kudziewinski is good law and that this court should affirm it. However, of course, we will accept whatever this court's ruling is, whether procedural or substantive. As to substantive issues, this court reviews the constitutionality of a statute de novo. And the first question is, what is the constitutional standard? And in Kudziewinski, this court held that the rational basis test applies to Section 513, and courts around the country have universally held that the rational basis standard applies to their post-secondary education laws. The first step in an equal protection analysis is to identify the classes that are being supposedly imposed upon. Mr. Yakich argued, and the trial court seemed to accept, that the classification fell along the lines of divorced and unmarried parents versus married parents. We take some exception with this because within the class of unmarried and divorced parents, you will have parents who agree to pay for their children's college, or you will have parents who agree that they're not going to pay for their children's college. And in either instance, they don't submit themselves to a court, and Section 513 will not apply to them. In this case, Mr. Yakich and my client, Ms. Olds, did not agree on college contribution, and so a petition was filed, and so the court applied Section 513. But what it demonstrates is that not all people within the class of unmarried and divorced parents will have Section 513 applied to them. Additionally, we would argue that a married parent can compel his or her spouse to contribute to the college expenses of their child through the Illinois Parentage Act without seeking a dissolution of marriage, and even possibly a petition for legal separation. Although this is rare, the Illinois Parentage Act is based on the parent-child relationship, not the parent-parent relationship, and specifically says that's not to be considered. The next step under an equal protection analysis is for the court to determine the public purpose of the statutes involved, and here we have two statutes. We have the Illinois Parentage Act of 2015, which applies because the parties in this case were never married, and then we also have the Illinois Marriage and Dissolution of Marriage Act, which contains Section 513. The Parentage Act recognizes the right of every child to the financial support of their parents, regardless of the parent's legal relationship. The Illinois Marriage and Dissolution of Marriage Act states two relevant purposes to this case, which is to mitigate the potential harm to spouses and their children caused by divorce, and to make reasonable provision or support during and after an underlying dissolution or parentage action. In Kujawinski, this court recognized the public purpose to mitigate harm and stated that Section 513 was a rational response to, quote, the major economic and personal impact of divorce on the lives of those involved. And Kujawinski discussed the nature and dynamics of divorce and found that it is very often the case where because of the divorce, a parent and child's relationship will be strained. The child is no longer under the immediate care and custody of that parent. There is animosity between the parents, and therefore they can no longer make joint decisions or joint financial decisions as they would be able to if they remained married. And that often divorced parents go on and remarry and have new relationships and undertake new financial obligations, which again makes it more difficult for them to contribute to children of the first marriage. However, this court is not bound by the express reasons articulated in the statute. In undertaking a rational basis analysis, the reviewing court is free to hypothesize reasons the legislature might have had for the classification. And that proposition is actually stated in the Pennsylvania Supreme Court case of Klein, which is Mr. Yakich's principal case that he relies on. And the Klein case cites a U.S. Supreme Court case from 1993, FCC versus Beach Communications. And Beach has a series of black-letter law regarding the rational basis standard and just how deferential a court should view statutes. So the unexpressed interest here that the state has is a well-educated citizenry. That is not expressly stated in the Parentage Act or the Dissolution Act, but this court is free to hypothesize that 513 serves that purpose. The next step in the equal protection analysis is whether the statute bears a rational relationship to a legitimate state interest. And I already explained how the Kudrwinski court found that 513 was a remedy to children of divorce or children whose parents are separated because these children are economically disadvantaged. And because of that, they won't have the same educational opportunities as their peers who are children of married couples. However, the trial court seemed to seize on Kudrwinski's use of the word normal when talking about households back in 1978. And the court said, well, because the majority of households in 1978 were married couples with children, and because in the 40 years since Kudrwinski, roughly 50% of children are children of divorce or unmarried couples, that the rationale of Kudrwinski no longer applied because the new normal are children of divorce or unmarried couples. This was grave error on the trial court's part in several ways. First of all, the trial court is not allowed to engage in judicial fact-finding and making what are essentially public policy judgments. Those are both provinces of the legislature. And in fact, the trial court ignored the fact that since Kudrwinski, Section 513 has been amended 10 times, including when the Dissolution Act was overhauled in 2016. And through each of these amendments, the Illinois legislature was stating that this is the public policy of Illinois, that this Section 513 is valid, and it is vital, and it is a good law. Additionally, the trial court erred in making the mistake that was discussed in the South Carolina Supreme Court's decision of McLeod, which was to invert the burden of proof. The trial court seemed to look to Ms. Olds and parties in her situation and say, explain to me how Section 513 is equitable in this circumstance. Instead, the trial court should have looked to Mr. Yakich and asked him to prove how is this law invalid in every circumstance. On a rational basis analysis, it is an extremely high burden for parties challenging the constitutionality of the statute, and it's intended to be so. Finally, if you even accept the statistics that the trial court relied on, which is that 50% of children today come from unmarried or divorced couples, then that would actually seem to bolster the rationale behind Kudrwinski, because Section 513 was passed in recognition that these children are economically disadvantaged. And so if there are more of them today than there were 40 years ago, 513 becomes all the more necessary and important. And in fact, I believe the court can also note that a college education is probably more necessary to compete in today's economy than it was 40 years ago. Additionally, the court found Section 513 unconstitutional as applied to Mr. Yakich only. And in an as-applied challenge, the enforcement of the statute is enjoined against the party only. In this case, the trial court's rationale for the as-applied unconstitutional finding was that Mr. Yakich was deprived of his right to guide his daughter to the choice of college that he saw fit, and that he was deprived of his right to use, quote, his economic largesse to steer her in that direction. However, in making this finding, the court ignored another precedent, which is a Second District case called In Re Marriage with Reich from 2000. And in that case, the Second District found that the parent's relationship with their child and the parent's lack of consent to that child's choice of school are not appropriate factors for a court to consider under Section 513. And the Reich case discussed Kujawinski in its analysis and said, well, if Section 513 recognized that children are disadvantaged often because they are estranged from their parents, then we're not going to say that that estrangement is a reason for the court to deny that parent's contribution. It would undermine the entire purpose of Section 513. And as I said, it ignored the precedent that the court was also bound by from the Second District. Additionally, the Missouri Supreme Court, in its case of Coring, stated that its post-secondary education law did not affect the parent's fundamental associational rights with his child. You can still talk to your child. You can still guide them. You can still give them advice. But what you cannot do is you cannot withhold the purse strings. That is, the law affects, therefore, the parent's economic rights. And because of that, the economic rights are simply matters that are viewed under a rational basis. They are not a fundamental liberty interest. One of our former presidents, Franklin Roosevelt, stated that democracy cannot succeed unless those who express their choice are prepared to choose wisely. The real safeguard of democracy, therefore, is education. This is demonstrated in many of today's polls, which often show a difference in voting habits between people with a college degree versus those without one. Further breakdowns in polls occur along income levels, which again often correlate with education level. In today's political information and media landscape, truth has become a subjective matter, and institutions which once held wide public trust no longer do so. The only way to ensure that public policies are based on established facts and institutions remain strong is through an educated citizenry that can think critically and discern facts from fiction. Section 513 is a good law with a noble purpose. It protects children who are disadvantaged from the effects of divorce. It promotes education, and it strengthens our democracy. For those reasons, we are asking this court to reverse the trial court's order of May 2018 and to reinstate the trial court's order of July 2016. If the court has no questions, thank you. Thank you. Counsel. Good morning. Good morning. May it please the court. My name is Sarah Casey, and I, along with Vincent and James D. Tommaso, represent the father of this matter, Charles Yakich. Ms. Casey? Yes. I know you haven't had a chance to say much yet, but we have to get past this point. This court has repeatedly held that where the Supreme Court has declared the law on any point, it alone can overrule and modify its previous opinion. And the lower judicial tribunals are bound by our decisions. So isn't it true that the lower court was bound to follow Kujawinski, no matter how much it may have disagreed with it or believed that it no longer represented good policy? You're right, Your Honor. By the document, it's very decisive. However, times have changed. And the last time this court has analyzed this issue was in 1978. Perfect. Perfect. That's a perfect answer. But here's the problem. The problem is if, you know, sometimes we ask questions up here and you don't know where we're going or what we're doing or how we're going to decide. I'm going to – this is very, very – this question is very important to me. Times may have changed, right? And certainly if this went through the normal appellate process and was appealed, this court would have received presumably a petition for a leave to appeal and we could decide whether a 1970 case should be changed, that times have changed. But if we allow this to stand, and that's why my question was about vacating, not even getting to the merits of this, if we allow this to stand, trial judges all over can force this court to take a case because it's going to say something was declared unconstitutional by a trial court that shouldn't have. That's why I think that's a very important question and why I'm spending so much time on it. Yes, Your Honor. With all due respect to the Kujawinski Court and its forerunners since, they did not speculate these major society changes that we've had. In addition, the assumptions that held that case with that ruling were just improper. The court relied on the assumption that married parents who can afford would actually even contribute to college. The payment of college expenses is not universal among parents whose marriages have stayed intact. Many married parents don't want to pay based on instilling values in their own children, teaching responsibility, or independence. In fact, one in 12 affluent parents think that parents should pay the majority of their own college tuition. The Kujawinski Court also based its ruling on a 1959 rationale for Mason versus Mason in the first district. And in that, they talked about what a normal family is. In addition, the court only focused on the classification between parents. Here, I'm asking the court to review the facts of mine to my client on the base between the classification between the children. May I ask? I'm not sure exactly what your point was there. But just to be clear, is this challenge a facial challenge to the statute or as an as-applied challenge? Your Honor, I'm making both. My first, I believe my strongest argument would be Section 513 is unconstitutional as applied in this case because ordering my client to contribute to his daughter's college contribution or tuition infringes upon his fundamental right to direct the upbringing of his own daughter. The Supreme Court of the United States, as you know, first acknowledged this right in Mayer versus Nebraska. Not only did the court recognize such a right then, but it also highlighted its willingness to defer to the parent's decision. I think this case is very analogous to Troxell versus Granville. There, the trial court substituted its own opinion in lieu of what the parent's opinion would be. However, the Supreme Court declared that the statute unconstitutional and held that so long as the parent is fit, there would be normally no reason for the state to interject in the private realm of the family. In here, the trial court inflicted a Troxell injury to my client by injecting its opinion as to the daughter's college decision. The circuit court entirely undermined my client's attempt to use his money to influence his daughter in going to another school. But here, just like in Troxell, there is no issue of unfitness in this case. He is fit, involved, and supportive of my... He is very supportive of his daughter's career aspirations. Therefore, the state is not better situated than my client to make those decisions about his daughter's higher education. It should not be permitted to interject. As established in Wisconsin versus Yoder, in every fundamental right case, or every fundamental right-to-parent case, the court must balance the state's interest with that of the parent's right. Even when it's an interest in education, no matter how highly that may be ranked. Absent some exceptions, which do not apply here, once a child is over 18, the state typically has no longer an interest. She's an adult. But even assuming that the state had an interest in a 20-year-old, the daughter here, her health, safety, and welfare was not at any risk at all. And thus, the state was not triggered to interject. The state's interest is weak compared to the father's. Compared to the state, the right-to-parent does not evaporate at the age of 18. Father and daughter do not simply become strangers. They still have a residual parent-adult relationship after the age of maturity. Although more dependent than a minor child, young adults, especially at 18 or 20, still lack maturity, experience, and judgment. If anything, parental guidance for the career aspiration is crucial at this time. Under this as-applied argument, Section 513 does not need to be vacated. Just like the court did in Troxel, the court can simply remand the case with a direction about how to apply the statute consistent with the father's fundamental right to direct his child's upbringing. This court should send a message that the parents in this particularly small class should be allowed to attempt to influence their child's post-secondary education. The court should not substitute its own direction for a parent. For the record reflects that he is fit and has always been involved in his child's life. He's simply looking for the best interests of her. Turning to my second point, the statute, Section 513, is spatially invalid because it improperly draws an irrational distinction between children based on their parents' marital status, thus violating the Equal Protection Clause. In Curtis v. Klein, the Supreme Court of Pennsylvania found that a 1993 law to have one parent contribute to their college, similar to the one here in Section 513, was unconstitutional. They held that the statute irrationally classified children. And here I ask that the court review the facts at hand under looking at the distinction between the children, not the parents, like they did in 1978 with Kudzowinski. The government shouldn't have authority to selectively classify young adult citizens and empower only a certain class of those young adults with financial assistance to their parents. Taking Section 513 one step further, Pennsylvania tried safeguarding the statute in its preamble. They noted the legislature's intent. They stated a rational, legitimate government interest required some parental financial assistance or a higher education for children of unmarried parents. This is most likely inserted to defend a rational basis analysis, but despite its efforts, the Supreme Court in Pennsylvania concluded that the classification of children, not parents, was not rationally related to any legitimate government interest, especially the easing of the struggles of the children of unmarried parents. In Curtis, the court highlighted a couple hypotheticals to show that the classification here is arbitrary. It shows how similarly situated children, both in need of funding for college, are treated unequal. Consider the divorced father who has two children, one from a prior marriage and one from a current intact remaining marriage. Under Section 513, the divorced parent or the divorced child, or the child of a divorced parent, seeking financial contribution, could have a court order it, but not the second child from the new marriage. The second child might even have to sacrifice college education so the first can receive assistance from the same father if the court so does order. I urge this court to reanalyze Kujawinski through the Curtis plans or find that no parent, regardless of their marital status, should contribute to college unless voluntarily agreed to in writing prior to college. Additionally, the daughter here was 20 years old when the matter started. Typically, children at age 18 are looking to go to college. The statute is invalid simply because it interferes in the decision between three adults, mother, father, adult child. There is no sufficient basis for the state to interfere with the decision between three adults. As a young adult, the daughter made the decision to attend Florida Gulf Coast University, although her father thought her decision negatively affected her career aspirations. The only way a father in this case could have realistically influenced his adult daughter was through monetary influence. However, the state is now saying that because he is unmarried and he has the financial means to contribute, he cannot even try to influence her decision. The state should not be invited at the dinner table when you have a mother and a father and an adult child deciding on a selection of a college. That again sounds like an as-applied challenge, correct? Yes. You seem to be blending the two. Sometimes you're speaking broadly in terms of how the statute functions. We're talking about majority. We're talking about three adults. That sounds like a facial challenge. And then you come back to your other point that here the dispute is not necessarily about whether or not college should be paid for but whether this specific college should be paid for. It seems like you're kind of blending the two arguments. I apologize for that, Your Honor. As an applied challenge, I'm asking that the court would protect my client because he is fit and involved and only has a best interest in his adult daughter. As applied, this court should find that Section 13 is unconstitutional given the facts of my client. What I'm talking about, facially invalid. Of course, when we're talking about the as-applied challenge, this statute is not mandatory, correct? It indicates that the court may order payments to the college costs if equity requires it, some language like that. So there's a great deal of broad discretion that the court hears in terms of facts to determine whether or not equity requires that the two parties share the college expenses. How does that fit into your analysis, that this is not a mandatory statute? This is after the court has heard all the evidence and makes a decision in the best interest of the child. Yes, Your Honor. In Curtis v. Kline, the statute was the same. It gave the court discretion over it. Yet the Supreme Court of Pennsylvania still found it facially invalid. And I would, again, urge the court to reassess the Kujovinsky case through the lens of Curtis v. Kline by looking at the distinction between the children and their parents. But, again, that would be my facially invalid argument. How about in terms of the as-applied? The court, as-applied assumes the statute is constitutional, but not in these facts. So here we have a case where the statute allows the court to weigh all of the facts and then make a decision based on discretion. How does that make it as applied to this specific fact on constitution? The fact that the state has no right interfering with my client's decision to help influence his daughter. He's fit, capable, and he should have the opportunity to interject or opportunity to influence his daughter. And the court heard that and made a decision that, despite his concerns, that in the best interest here, as equity requires, whatever the language of the statute is, that he should have to pay. So the court took all those factors into consideration. Correct? Originally in the order? Yes. We need to, but we cannot guarantee that all judges and all courts will rule by taking everything into consideration. My client suffered, as I would call it, a troxel injury. And if we carved out a revised statute to make sure we protect a parent who is very involved, engaging, then that area of the parent should be protected. The opposing counsel stated that the act was revised 10 times already. But that is why we have applied challenges. The legislature is not good at seeing every single bad scenario. The maintenance opinion, Mattson opinion, in 1959, which the Cujo would speak for, it relied on in 1978, stated that however wise a legislature may be, however foresighted, even profitable, it is dealing with nothing more than foresight. The legislature is dealing exclusively with what may happen. The courts and the agencies are at grips with what did happen and what is currently happening. They would do better to recognize what is expected of their function and do their best to perform it. Again, I urge that this court revise Cujo Whiskey by looking at the distinction between the children, not as the parents. For all the other reasons set in our brief, we ask the court to affirm the lower court's decision and find that Section 513 is unconstitutional. Thank you. Thank you. Brief by. Mr. Chief Justice, may it please the court. I am Michael Scalzo, co-counsel for Appellant Rosemary Ault. My co-counsel articulated the appellant's position effectively both here today and in our briefs. I would offer another dimension on this case. In more than 40 years of legal practice, this case appears to be a bit of an aberration. In our troubled society, it's important that our institutions support the glue that holds society together, and that glue is the rule of law. The rule of law provides stability and predictability to our citizens, and as lawyers and judges, our duty, our job is to support the rule of law. For 40 years, Section 513 has been the law in Illinois, as enacted and amended multiple times by our legislature. This court decided that 513 was constitutional in the Cujo Whiskey case. It was settled and relied upon by lawyers, litigants, and judges. For 40 years, children of unmarried parents relied on Section 513 and Cujo Whiskey. In this case, the rule of law was not followed. The legislature did not retract or remove Section 513. This court had not overturned Cujo Whiskey. How did this trial court override the long legislative history in support of 513? There was no evidentiary hearing on the constitutional issue. No witnesses were called, no cross-examination, no experts. The trial court found that there was a rational basis for 513 and Cujo Whiskey 40 years ago, but not any longer. Society had changed in the trial court's opinion. Certainly, the legislature has been aware of society's changes and the laws of other jurisdictions. But nevertheless, it has amended 513 from time to time, but kept it largely intact. It couldn't be more clear that the legislature finds it important to provide support in the courts for children of unmarried parents. And why is this? Well, we can see and we know that the state of Illinois spends millions of dollars on education, elementary, high school, community colleges, and the like, because an educated citizenry is a laudable goal and a rational one. Section 513 is an extension of that goal. It is necessary because children of unmarried parents have been disadvantaged by their circumstances. This disadvantage is evidenced by the millions of dollars spent on child support enforcement in the state of Illinois. If it's often difficult to enforce child support obligations, it is rational to assume that children of unmarried parents will continue to be disadvantaged after high school. Further, Section 513 provides ample discretion to the trial court to evaluate the circumstances of each case and craft a result to meet each individual situation, such as putting a cap on expenses, requiring the child to maintain a C average, and considering all of the financial resources available, not just to the parents, but to the child through grants and loans and work-study. So the court considers all of that. And certainly trial judges are not free agents. They are bound to follow Supreme Court decisions. Lawyers are bound to present evidence to support their legal positions or even an extension of the law. It is insufficient to argue without a hearing and without any evidence that 513 is unfair or inequitable or society has changed. Those arguments could be properly addressed to the legislature, and that is an afterthought in a long litigated case. This case has had a ripple effect in the family law courts of Illinois. The issue has now been raised in numerous family law courts in Illinois and taken many hours of court time and added expense to litigants whose resources are better directed at educating their child. The appellant asks this court to resettle Kujawinski as the law in Illinois for herself and all those similarly situated. Finally, I note that the appellate relies heavily on Curtis V. Klein, a case decided by Pennsylvania Supreme Court in 1995. Certainly the legislature was aware of Curtis V. Klein and all the other cases and other statutes in other jurisdictions. Equally certain is that the Illinois legislature considered and adopted the point of view of the two justices who wrote the dissent in Klein, and I quote, the court need not and should not change direction to comport with every change in the prevailing social winds. If the appellant's view prevails here, there is no recourse for children of unmarried parents who will be victimized twice. First, by the disadvantages, emotional and financial, of having unmarried parents, and second, by the law which is designed to protect them. The Illinois legislature has decided to offer protection to these children. It is rational and just to do so. We respectfully request that the order of 5-4-18 be vacated and the order of 7-22-16 be reinstated. The court has no questions. Mike Klein and I thank you. Thank you. Case number 123667, Jackich v. Halls, will be taken under advice as agenda number six. Mr. Todd Scalzo, Mr. John Scalzo, Sarah Casey, we thank you all for your arguments this morning. You are excused.